UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILLIAM  HORHN,           §
TDCJ #01966975,           §
                          §
          Petitioner,     §
VS.                       §        CIVIL ACTION NO. H-17-3576
                          §
LORIE  DAVIS-DIRECTOR TDCJ-CID,  §
                          §
          Respondent.     §

## MEMORANDUM AND ORDER

Petitioner William Horhn (TDCJ #01966975) is a state inmate presently confined by the

Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ").  Petitioner

proceeds *pro se* and has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

and memorandum of law in support, challenging his conviction and sentence.  [Doc. Nos. 1 &

2].  Respondent has filed a motion for summary judgment [Doc. No. 12], and Petitioner has

filed a motion for summary judgment in response.  [Doc. No. 16].  After considering all of the

pleadings, the record, and the applicable law, the Court grants Respondent's motion for

summary judgment, denies Petitioner's motion for summary judgment, and dismiss this habeas

petition.

## I.    BACKGROUND

Petitioner is currently incarcerated in TDCJ as a result of a judgment and sentence in the

338th Judicial District Court of Harris County, Texas, in cause number 1383990.[1]  On August

---

[1] Doc. No. 1 ("Petition") at 2-3.

27, 2014, Petitioner was convicted of fraudulent use of identifying information pursuant to Texas Penal Code § 32.51 and sentenced to twenty years' imprisonment after a jury trial.[2]

On direct appeal, a state intermediate court of appeals rejected Petitioner's arguments and affirmed the conviction after summarizing the facts and at trial as follows:

> Police officers arrested [Petitioner] after observing him at a gas station in Harris County and recognizing him as someone who was a suspect in a burglary. Upon approaching and detaining [Petitioner], officers discovered that the burglary warrant was no longer valid, but they received information that [Petitioner] had valid warrants for his arrest based on his failure to appear in municipal court in the city of Oak Ridge North in Montgomery County. The officers arrested [Petitioner], and, incident to the arrest, recovered [Petitioner]'s cell phone and a credit card in the name of complainant Marisol Pimentel. Police obtained a warrant to search the cell phone and discovered additional items of identifying information, including names, social security numbers, and dates of birth for multiple individuals. [Petitioner] was charged with fraudulent use of identifying information of multiple named complainants with the intent to defraud and harm. He was also charged with unlawful possession with the intent to use the debit card of another without effective consent.
>
> [Petitioner] filed a motion to quash his indictment for fraudulent use of identifying information, arguing that Penal Code section 32.51 "is invalid on its face because it's overbroad and it is a restriction on the First Amendment right to free speech." The State responded that the offense addressed possession of information, not acts of "expression," and that the law was narrowly tailored "to advance the keen interest that the government has in protecting its citizens from identity theft." The trial court denied the motion to quash.
>
> [Petitioner] also moved to suppress the evidence obtained as a result of the search incident to his arrest on several grounds. Relevant to this appeal, he argued that the municipal arrest warrant was invalid because the supporting affidavit did not provide probable cause to issue the warrant. He also argued that because his arrest was based on an invalid warrant, his arrest was illegal and the evidence obtained incident to his arrest was likewise inadmissible. At the suppression hearing, the trial court admitted a copy of [Petitioner]'s arrest

---

[2] *Id.* The Jury also convicted Petitioner for credit card abuse in cause number 1383989, which was tried at the same time. *See Horhn v. State*, 481 S.W.3d 363, 366 & n.1 (Tex. App.— Houston [1st Dist.] 2015, pet. ref'd). Petitioner was sentenced to six months' imprisonment for credit card abuse, to be served concurrently with the 20-year sentence for fraudulent use or possession of identifying information. *Id.*

warrant for failure to appear in the Oak Ridge North municipal court and other documents.

. . . .

Officer C. Flora also testified at the suppression hearing. He stated that he and his partner verified through dispatch that [Petitioner]'s traffic-violation warrants from Oak Ridge North were still valid and arrived at the scene after [Petitioner] had been detained. Prior to informing [Petitioner] of his *Miranda* rights, the officers recovered [Petitioner]'s wallet, which contained a credit card in someone else's name, and a cell phone. Officer Flora asked [Petitioner] about the phone, and [Petitioner] acknowledged that the phone was his but stated that it did not work. Officer Flora then asked [Petitioner] whether there was anything illegal on the phone that the police needed to know about and asked if the officers could look at it. Officer Flora testified that [Petitioner] gave his consent to the examination of the cell phone and noted [Petitioner]'s consent in the offense report.

Officer Flora testified that he "initially went to the images on [Petitioner]'s phone and . . . noticed a few spreadsheets that someone had taken a picture of that contains several names, dates of birth, social security numbers and addresses and some e-mail accounts." At that point, Officer Flora contacted the District Attorney's Office and was advised to get a search warrant for the phone. Officer Flora provided the affidavit and obtained the search warrant. Pursuant to the search warrant, Flora gave the phone to the police department's digital forensics lab to recover the information, which yielded much of the evidence presented by the State regarding [Petitioner]'s possession and use of identifying information with the intent to defraud or harm.

Officer T. O'Neill testified that he and his partner responded to Sergeant Wood's call and detained [Petitioner] while the existence of the outstanding warrants was verified. Officer O'Neill stated that once he confirmed the validity of the warrants he arrested [Petitioner] and conducted a search incident to the arrest. He discovered the wallet in [Petitioner]'s pocket and "[l]ooked for identifying information in the wallet." He discovered the Visa card in Pimentel's name and determined that she "was a complainant in a theft where a purse was stolen." He returned the wallet and the rest of its contents to a friend of [Petitioner] and retained Pimentel's card as evidence.

[Petitioner] testified that he was helping a friend put oil in his car when he was detained by the police officers. He stated that he was immediately handcuffed and officers told him that he was being arrested "[b]ecause [he] had warrants out of Fort Bend." [Petitioner] further testified that the officers removed his shoes and emptied everything out of his pockets before placing him in the back of the police car. He acknowledged that the police recovered a cell phone from the car, but he

stated that he never had a conversation with any of the officers about the phone, never stated that it was his, and never agreed that officers could look inside the phone. On cross-examination, [Petitioner] testified that the cell phone did not belong to him but he used it. He stated that he had the cell phone in his possession the afternoon he was arrested.

[Petitioner] argued that the affidavit accompanying the municipal arrest warrant relied upon by the State was "wholly conclusory." The State responded that [Petitioner] was arrested pursuant to a warrant and that the trial court was required to give deference to the magistrate's decision to sign the arrest warrant. The trial court denied [Petitioner]'s motion to suppress, and it stated on the record that it found the testimony of the officers credible and it found that the evidence was lawfully obtained.

The jury convicted [Petitioner] of the felony offenses of debit card abuse and fraudulent use of identifying information, and the trial court assessed his punishment.

*Horhn v. State*, 481 S.W.3d 363, 366-68 (Tex. App.–Houston [1st Dist.] 2015, pet. ref'd).

The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on April 27, 2016. *Horhn v. State*, No. PD-1630-15 (Tex. Crim. App. Apr. 27, 2016). The United States Supreme Court denied Petitioner's petition for a writ of *certiorari* on October 31, 2016. *Horhn v. Texas*, 137 S. Ct. 378 (2016). On June 15, 2017, Petitioner filed a state application for a writ of habeas corpus that the Texas Court of Criminal Appeals denied without written order on October 18, 2017.[3] This § 2254 proceeding, filed on November 15, 2017, followed. Respondent and Petitioner have filed motions for summary judgment, and this case is ripe for adjudication.

---

[3] State Habeas Corpus Record ("SHCR"), Doc. No. 15-11 at Action Taken Sheet; SHCR, Doc. No. 15-13 at 21. Unless otherwise specified, the citations to the record reference the pagination stamped in the CM-ECF system.

## II.    STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276 (5th Cir.1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.,* 37 F.3d 224, 227 (5th Cir.1994).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86, 103 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Anti-terrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of

the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter,* 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Petitioner's claims were adjudicated on the merits by state courts. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id.* (citation omitted); *see also*

*Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992).

## III.   DISCUSSION

Petitioner asserted eight grounds for relief in his federal petition. [Petition at 6, 13-14]. In his response, he voluntarily dismisses Grounds 3, 4, 5, and 6, and those grounds are dismissed. *See* Doc. No. 16 at 1.

Construing Petitioner's remaining claims and allegations broadly, he claims that: (1) Texas Penal Code § 32.51, which forbids the use or possession of identifying information with the intent to defraud or harm, is void for overbreadth under the First Amendment ["Ground

One"]; (2) trial counsel was ineffective for failing to argue the illegal warrantless search of the automobile ["Ground Two"]; (3) trial counsel was ineffective for failing to call any witnesses to aid in Petitioner's defense ["Ground Seven"]; and (4) appellate counsel failed to brief trial court error in denying the direct verdict ["Ground Eight"].

### A.    Texas Penal Code § 32.51 (Ground One)

Petitioner contends that Texas Penal Code § 32.51 ("§ 32.51"), the Texas statute criminalizing the use or possession of identifying information with the intent to defraud or harm, is facially unconstitutional as overbroad under the First Amendment. *See* Doc. No. 2 at 6-30. A Texas intermediate court of appeals adjudicated this claim on the merits and concluded that it was not overbroad and did not violate the First Amendment. *Horhn*, 481 S.W.3d at 375. The Texas Court of Criminal Appeals refused the petition for discretionary review, and the United States denied *certiorari*. Thus, the state intermediate appellate court was the last state court to render a reasoned opinion regarding Petitioner's claim for Ground One. *See Ylst v. Nunnemaker*, 501 U.S. 797, 799-800 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

Petitioner's challenge to the constitutionality of a state statute presents a pure question of law, and, therefore, Petitioner may obtain habeas corpus relief regarding § 32.51 only if the intermediate state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007) (holding that 28 U.S.C. § 2254(d)(1) applied on federal habeas review where the state court determined the constitutionality of a statute). "A decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Id.* (quoting *(Terry) Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A decision involves an 'unreasonable application of' clearly established federal law 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.*

The United States Supreme Court has explained that a statute may be invalidated as overbroad under the First Amendment if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (citations and internal quotation marks omitted). A court's "first task" on a facial overbreadth challenge is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "If it does not, then the overbreadth challenge must fail." *Id.* Further, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Instead, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801 (citations omitted). Finally, the Supreme Court employs the overbreadth doctrine "only as a last resort" and with hesitation because the "overbreadth doctrine is 'strong medicine.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

The party challenging the statute for overbreadth bears the burden of proof. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

The state court determined that § 32.51 "requires the specific intent to harm or defraud and requires that the actor 'obtains, possesses, transfers, or uses an item [of] identifying information' with that specific intent." *Horhn*, 481 S.W.3d at 375 (citations omitted). Section 32.51 provides, in relevant part, that "a person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of: (1) identifying information of another person without the other person's consent; . . . ." Tex. Penal Code § 32.51(b) (1) (Vernon's 2011). "'Identifying information' means information that alone or in conjunction with other information identifies a person," including, for example, name and date of birth, government-issued identification number, or unique biometric data. *Id.* § 32.51(a)(1). "'Harm' means anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id.* § 1.07(a) (25) (Vernon's 2011).

Relying on the reasoning of the Texas Court of Criminal Appeals in *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), the *Horhn* court found that § 32.51 does not specifically reference spoken words or other inherently communicative actions and is "'not susceptible of application to communicative conduct that is protected by the First Amendment' and 'does not implicate the free-speech guarantee of the First Amendment.'" *Horhn*, 481 S.W.3d at 375 (quoting *Scott,* 322 S.W.3d at 669). The state intermediate appellate court reasoned that § 32.15 prohibited conduct that was "essentially noncommunicative" and, in those circumstances where it might be susceptible of application to communicative conduct, it is not protected by the First Amendment because it "invades the substantial privacy interests of another–the victim–in an

essentially intolerable manner by using his identifying information without his permission and with the intent to defraud or harm him." *Id.* The court concluded that § 32.15 does not implicate the First Amendment, is not overbroad because it does not reach "a substantial amount of constitutionally protected conduct,'" and is not a content-based restriction on speech. *Id.* (citing *Vill. of Hoffman Estates*, 455 U.S. at 494).

In *Jones v. State*, the Texas Court of Criminal Appeals explained that § 32.51's purpose is to prevent identity theft. 396 S.W.3d 558, 562–63 (Tex. Crim. App. 2013). The *Jones* court noted that § 32.51's "placement within Title 7 of the Penal Code, entitled 'Offenses Against Property' indicates the statute is property-centric" and that "[s]pecifically, its inclusion within Chapter 32, Sub–Chapter D, entitled 'Fraud' and 'Other Deceptive Practices,' respectively, is indicative of the fact that this offense is intended to prevent fraudulent practices." *Id.* Since *Jones* and *Horhn*, Texas courts have repeatedly construed § 32.51 to require the specific intent to defraud or harm and held that the prohibited conduct was "essentially noncommunicative" and did not run afoul of the First Amendment. *See, e.g., Ex Parte Harrington*, 499 S.W.3d 142, 146 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Williams v. State*, 499 S.W.3d 498, 501–02 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see also* Eugene Volokh, *Crime–Facilitating Speech*, 57 STAN. L. REV. 1095, 1146–47 (2005) (observing that Social Security numbers and computer passwords are "categories of speech that are likely to have virtually no noncriminal uses" and that "[r]estricting the publication of full social security numbers or passwords . . . will not materially interfere with valuable speech").

Nonetheless, Petitioner invokes a few scenarios where he maintains that § 32.51 casts too wide a net to include "routine and innocuous activities." [Doc. No. 2 at 20, 21]. For example, Petitioner argues that criticism of public figures on the internet, background checks by

prospective employers, Harris County's publication of a person's civil litigation history on its website, investigative journalists attempting to identify a subject for a story, and protestors like Westboro Baptist Church—supposing they picketed with a placard listing the deceased person's name and date of birth—constitute conduct that would violate § 32.51. [*Id.* at 18-22]. The state intermediate appellate court rejected Petitioner's "routine and innocuous activities" because they did not fall within the purview of § 32.51 and ignore the *mens rea*—the specific intent to harm or defraud—that the statute requires. *Horhn*, 481 S.W.3d at 376 (citing *Vill. of Hoffman Estates*, 455 U.S. at 494).

The state court's conclusion was not an unreasonable application of United States Supreme Court precedent. Petitioner fails to show that "a substantial number of the statute's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Wash. State Grange*, 552 U.S. at 449 n.6, and does not "demonstrate 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court'" as is required to show that a statute is overbroad. *Shackelford v. Shirley*, 948 F.2d 935, 940 (5th Cir. 1991) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). Because Petitioner fails to show that the state court's conclusion that § 32.51 is not overbroad in violation of the First Amendment is contrary to, or an unreasonable application of, Supreme Court precedent, Petitioner is not entitled to relief on Ground One.

## B.    Ineffective Assistance of Counsel

The Constitution guarantees a fair trial for criminal defendants through the Due Process Clause, but the basic elements of a fair trial are defined largely by the Sixth Amendment, which conveys the right to have the effective assistance of counsel. *See* U.S. CONST. amend. VI;

*Strickland v. Washington*, 466 U.S. 668, 685 (1984); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (observing that "the right to counsel is the right to the effective assistance of counsel"). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Thus, to prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams*, 529 U.S. at 390-91.

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006).

To prove prejudice, the second prong under *Strickland*, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Because Petitioner's ineffective-assistance claims were rejected on state habeas review, the central question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was *unreasonable* — a substantially higher standard.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)) (emphasis added). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* When applied together with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. *Knowles*, 556 U.S. at 123; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); *Beatty v Stephens*, 759 F.3d 455, 463 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2312 (2015) (same).

Ineffective-assistance claims lodged against appellate counsel are also governed by the *Strickland* standard. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986). To establish that appellate counsel's performance was deficient in this context, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In other words, a defendant must show that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

### 1. Failure to Argue Illegal Warrantless Search of Vehicle (Ground Two)

Petitioner contends that his trial counsel was ineffective because she failed to argue that the warrantless search of the vehicle was illegal. The record refutes this claim.

The record reflects, and the state habeas court found, that trial counsel filed motions to suppress the evidence "from the Defendant's person, belongings, or vehicle."[4] The record also reflects that trial counsel argued that the search was without reasonable suspicion or probable cause, that the arrest warrants were invalid, and that trial counsel presented Petitioner's testimony at a suppression hearing to suppress evidence recovered from the search.[5] The record indicates that trial counsel presented Petitioner's testimony as evidence and cross-examined the police officers who testified at the suppression hearing and that the trial court found the police officers credible and denied Petitioner's motion to suppress.[6]

In addition, the state habeas court found that Petitioner did not show that the vehicle was searched at all, or that the vehicle belonged to him such that he had standing to contest the search of the vehicle.[7] The habeas court concluded that Petitioner had failed to show that trial counsel's performance fell below an objective standard of reasonableness or that she failed to object to inadmissible evidence.[8]

---

[4] SHCR, Doc. No. 15-15 at 34-35 (Findings of Fact ("FOF") ¶¶ 11-15), 46-48 ("Motion to Suppress Evidence"), 50-53 ("Amended Motion to Suppress Evidence").

[5] SHCR, Doc. No. 15-15 at 34-35 (FOF ¶¶ 11-15); Reporter's Record ("RR"), Vol. 3, Doc. No. 13-16 at 1-57 (Hearing on Amended Motion to Suppress).

[6] RR, Vol. 3, Doc. No. 13-16 at 12-15 (Cross Exam. of Officer Wood), 22-25 (Cross Exam. of Officer Flora), 32-33 (Cross Exam. of Officer O'Neill), 33-35 (Direct Exam. of Petitioner); RR, Vol. 4, Doc. No. 13-17 at 6 (Trial Court's Ruling).

[7] SHCR, Doc. No. 15-15 at 35 (FOF ¶¶ 15-17).

[8] SHCR, Doc. No. 15-15 at 40 (Conclusions of Law ("COL") ¶¶ 2, 4).

The petitioner bears the burden of proving that the evidence admitted at his trial would have been suppressed as a result of an adequate motion or objection by his counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Petitioner does not meet his burden based on the record of the state proceedings that reflect that trial counsel moved to suppress the evidence from the search at the time of his arrest, as set forth above.

Therefore, Petitioner fails to show that the state habeas court's conclusion that trial counsel did not render ineffective assistance of counsel is contrary to, or an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254(d)(1). Further, Petitioner does not demonstrate that the state habeas court's findings that Petitioner's contentions are refuted by the record are based on an unreasonable determination of the facts in light of the evidence presented in the court proceeding. 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner is not entitled to relief on Ground Two.

### 2. Failure to Call Witnesses (Ground Seven)

Petitioner contends in his memorandum in support of his federal petition that trial counsel was ineffective because she failed to call any witnesses in Petitioner's defense, including the two individuals who were with him at the time of the arrest, Patrick Sowells and Tevon Lewis. [Doc. No. 2 at 56]. He further alleges that testimony from these two individuals would have benefitted his case because they "could have helped [Petitioner's] defense." [*Id.*].

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses' willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only

that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Petitioner does not show that any of his proposed witnesses would have testified at trial, nor does he allege what the witnesses would have stated and how that testimony would have benefitted his case had they been called. The state habeas court found that Petitioner "fails to identify the names of the individuals, fails to show what testimony they would have offered at trial, and fails to allege that the individuals were available and willing to testify in trial."[9]

Although he names two potential witnesses for the first time on federal habeas review,[10] he does not show that they would have had any favorable testimony to offer that would have benefitted Petitioner's case. He does not present an affidavit or other sworn account from any of the witnesses he claims that his counsel should have called. "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations and internal quotation marks omitted). Absent affidavits (or similar matter) from any of the above-referenced witnesses, Petitioner's claim is speculative and conclusory and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See id.* at 636.

Petitioner fails to show that the state habeas court's conclusion that he did not demonstrate that his counsel was ineffective regarding witnesses is not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of

---

[9] SHCR, Doc. No. 15-15 at 34-35 (FOF ¶¶ 9-10).

[10] It does not appear that Petitioner named these witnesses in his state application for a writ of habeas corpus. *See* SHCR, Doc. No. 15-13 at 11, 36.

the facts based on the record. 28 U.S.C. § 2254(d)(1). In addition, Petitioner does not demonstrate that the state court's conclusion that he failed to show actual prejudice because the witnesses did not testify on his behalf was contrary to or an unreasonable application of Supreme Court precedent. *Id.* § 2254(d)(2). Accordingly, he is not entitled to relief on Ground Seven.

### 3. Failure to Raise Error for Denial of Directed Verdict (Ground Eight)

Petitioner claims that appellate counsel was ineffective because he did not raise the issue of the denial of the directed verdict. The state habeas court found that Petitioner did not meet his burden regarding his challenge to the denial of a directed verdict because he failed to allege and prove that there is a reasonable probability that he would have prevailed on appeal.[11]

Under Texas law, "[a]n appeal from the denial of a motion for directed verdict and a challenge to the submission of an issue are the same as a challenge to the legal sufficiency of the evidence to support the jury's affirmative finding." *Love v. State*, 972 S.W.2d 114, 118 (Tex. App.—Austin 1998, pet. denied) (citing *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992); *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 346 (Tex. App.—Houston [14th Dist.] 1994, writ denied)).

When reviewing a challenge to the legal sufficiency of the evidence, court look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of the witnesses, of the weight to be given their testimony, and of the reconciliation of the conflicts in the evidence, whether direct or circumstantial. *See id.* at 326; *accord Jones v. State*,

---

[11] SHCR, Doc. No. 15-15 at 38-39 (FOF ¶ 37).

944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)). To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." *Id.* This standard requires counsel "to research relevant facts and law or make an informed decision that certain avenues will not prove fruitful." *Id.*

At trial, Officer Flora testified that Petitioner told him that the phone was his.[12] The evidence from the phone showed that Petitioner possessed spreadsheets containing names, dates of birth, and social security numbers of numerous individuals, several of whom testified that they had not given Petitioner their consent to possess or use their information.[13] In sum, there was sufficient evidence for a rational trier of fact to conclude that Petitioner was guilty of the crime alleged. Therefore, Petitioner does not show that, had appellate counsel raised the issue, there is a reasonable probability that he would have prevailed on appeal. *Smith*, 528 U.S. at 285-86.

Accordingly, Petitioner does not show that the state habeas court's conclusion that appellate counsel rendered effective assistance of counsel was contrary to, or an unreasonable application of *Strickland*, or that it was an unreasonable application of the facts in light of the state proceeding. 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to relief on Ground Eight.

---

[12] RR, Vol. 4, Doc. No. 13-17 at 50:9-10, 20-25.

[13] *See generally*, RR, Vol. 4, Doc. No. 13-17 at 59-146; RR, Vol. 5, Doc. No. 13-18 at 14-33.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For reasons set forth above, this court concludes that jurists of reason would not debate whether the petitioner states a valid claim for relief.  Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.   The respondent's motion for summary judgment [Doc. No. 12] is **GRANTED**.

2.   Petitioner's motion for summary judgment [Doc. No. 16] is **DENIED**.

3.   The habeas corpus petition is **DISMISSED** with prejudice.

4.   A certificate of appealability is **DENIED**.

5.   A Final Judgment will issue by separate Order.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this _____ day of March, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE